JOSEPH McKEON, PETITIONER, v. THE FOUNDATION COMPANY, RESPONDENT.

Submitted January 15, 1946—Decided July 30, 1946.

Before Justices DONGES, HEHER and COLIE.

For the petitioner, *Peter L. Hughes, Jr.*

For the respondent, *John W. Taylor.*

The opinion of the court was delivered by

COLIE, J.  *Certiorari* was allowed to review the judgment of the Hudson County Court of Common Pleas in a workmen's compensation suit.  Both the Workmen's Compensation Bureau and the Common Pleas made an award of 2½% of partial permanent disability.

On July 21st, 1944, Joseph McKeon filed a petition in the Workmen's Compensation Bureau in which he described his injury as "permanent injury to abdomen, groins, internal injuries; hernia."  When the case came on for hearing before the Deputy Compensation Commissioner, the claim of a hernia was abandoned and the cause proceeded on the theory of "an abdominal strain."

The testimony established that in the forenoon of Friday, March 11th, 1944, Joseph McKeon, with three fellow-employees, while carrying a coil weighing from 250 to 300 pounds, slipped on a railroad track.  All of the weight seemed to fall on him and he felt a sharp pain in his abdomen.  That evening he went to a Dr. Berney, who diagnosed his condition as a bad

strain. McKeon returned to work on the following Monday and continued to work for some three or four weeks, when he noticed a lump in his left groin. The condition was then diagnosed by the doctor for the employer as a hernia.

At the hearing, McKeon called Mr. Cardinale who had first examined him on May 1st, more than thirteen months after the accident on March 11th, 1944. He testified as follows: "I made a diagnosis of a muscular and ligamentous strain of the left lower abdomen. Diagnosis of direct, left inguinal hernia" and estimated his disability as five per cent. of partial total. He testified that the tenderness in the muscles of the left side was due to the strain and not to the hernia. The respondent called Dr. Chapman who was asked by the deputy commissioner "In what way, if any, did the episode of this accident play, either by way of causation or aggravation, with respect to the underlying condition?" and replied "It may have stretched this some."

The evidence squarely presents the question of whether an injured workman may recover compensation for a strain in the inguinal region which, while insufficient to bring on a hernia at the time, yet was sufficient to result in a hernia some three or four weeks later.

The legislature has specifically dealt with the subject of inguinal hernia and allows compensation where a hernia results from application of direct force to the abdominal wall, either puncturing or tearing it and then provides as follows:

"All other cases will be considered as either congenital or of slow development and not compensable, being a disease rather than an accidental injury; unless conclusive proof is offered that the hernia was immediately caused by such sudden effort or severe strain that, first, the descent of the hernia immediately followed the cause; second, that there was severe pain in the hernial region; third, that there was such prostration that the employee was compelled to cease work immediately; fourth, that the above facts were of such severity that the same was noticed by the claimant and communicated to the employer within twenty-four hours after the occurrence of the hernia (days when the business is not in operation, such as Sundays, Saturdays or holidays shall be excluded from this ·

twenty-four-hour period) ; fifth, that there was such physical distress that the attendance of a licensed physician was required within twenty-four hours after the occurrence of the hernia." *R. S.* 34:15–12.

It will be noted that the legislative test for compensability of a hernia other than one due to direct trauma is dependent upon conclusive proof of the five points enumerated in the statute. If the proof falls short in any one respect, compensation may not be had for a hernia. The purpose of the legislation is to guard the employer from claims for hernia which are either congenital or of slow development and the reason is understandable when one considers the nature of an inguinal hernia. In the male, the inguinal canal is an aperture in the muscular wall of the abdomen through which passes the spermatic cord. It is medically recognized as a weak point through which a hernia may protrude if the muscles surrounding or forming the inguinal ring are strained or stretched so as to enlarge the opening of the canal. When it is remembered that these muscles are brought into play in all acts of lifting or pulling, it becomes obvious why inguinal herniæ are of common occurrence and why the Workmen's Compensation Act was amended with reference thereto.

McKeon no doubt on March 11th, 1944, underwent a strain and a stretching of the muscles in the left groin which enlarged the inguinal canal, but such an injury is not compensable. The physiological change that took place on March 11th was but a single step in the "slow development" mentioned in the statute. If compensation were to be allowed in this case we would then have the anomalous situation of compensating an injured workman for one of the steps in the slow development of a hernia, when he would be denied compensation had the end result been an inguinal hernia. The strain of the muscles resulting from the accident of March 11th, 1944, was neither a separate and independent injury nor a cumulative disability (*Cf. Sigley* v. *Marathon Razor Blade Co.,* 111 *N. J. L.* 25; *Colarusso* v. *Bahto,* 128 *Id.* 537) but was a step in the development of the hernia which objectively became manifest some three or four weeks later. For this court to hold otherwise would be an unwarranted extension

of the legislation on the subject of inguinal herniæ. If the result reached in this case is a hardship, the remedy lies with the legislature, not with the courts. · The judgment under review is reversed.